UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
TRANSPORTATION INSURANCE
COMPANY,

                            Plaintiff,

    -against-

AARK CONSTRUCTION GROUP, LTD.,
D/B/A/ AARK INTERSTATE
CONTRACTORS, INC.,

                            Defendant.
-------------------------------------------------x
AARK CONSTRUCTION GROUP, LTD.,
D/B/A/ AARK INTERSTATE
CONTRACTORS, INC.,                                <u>MEMORANDUM AND ORDER</u>
                                                                                                                     04 CV 2881 (ILG)

    Defendant/ Third-Party Plaintiff,

    -against-

WEBSTER INSURANCE, s/h/a WEBER
INSURANCE, ALL TRADE
ENTERPRISES, INC., DISANO
CONSTRUCTION CO., INC., FALL CREEK
CONTRACTORS, INC., GARDEN STATE
ELEVATOR INDUSTRIES, INC., MAV
CONSTRUCTION CORP., S&S ROOFING,
INC., SELECT ENVIRONMENTAL
SYSTEMS, INC., t/a SELECT
MAINTENANCE SERVICE, INC., t/a
DALE SHEET STREET, and STAT FIRE
SUPPRESSION, INC.

            Third-Party Defendants.
-------------------------------------------------x

GLASSER, United States Senior District Judge:

**INTRODUCTION**

Plaintiff Transportation Insurance Company ("Transportation") seeks a declaratory judgment that it does not owe Defendant AARK Construction Group, Ltd. ("AARK") a duty to defend and indemnify it in connection with an underlying suit. Webster Insurance ("Webster"), joined as a third-party defendant by AARK, similarly seeks a declaration that it is not responsible, as AARK's insurance broker, for any losses that AARK might incur in the underlying suit. Both motions have been brought before this Court pursuant to Federal Rule of Civil Procedure 56. For the reasons explained below, the Court grants Transportation and Webster's motions.

**BACKGROUND**

On October 29, 1999, AARK and Dollar Rent-A-Car ("Dollar") entered into a contract whereby AARK was hired to act as the general contractor for the construction of a parking garage located near LaGuardia Airport. See Webster Rule 56.1 Statement of Undisputed Facts ("Webster 56.1"), dated July 19, 2007, ¶ 1.[1] AARK did not perform any of the construction, but rather subcontracted out the entirety of the work. See

---

[1] AARK did not respond to either Transportation or Webster's Rule 56.1 Statements of Undisputed Facts with appropriately numbered responsive paragraphs as required by Local Rule 56.1(b). Transportation and Webster both request that this Court deem admitted all the facts in their Rule 56.1 Statements. Where a responding party fails to submit a responsive Rule 56.1 Statement, the Court may deem admitted all facts in the movant's statement. See, e.g., Vaughn v. Consumer Home Mortg. Co., 01 CV 7939 (ILG), 2006 U.S. Dist. LEXIS 54267, at *37 (E.D.N.Y. Aug. 3, 2006) (Glasser, J.). However, this Court has "broad discretion . . . to overlook a party's failure to comply with local court rules" and may "opt to consider an assiduous review of the record" even in cases where a party fails to submit a Rule 56.1 Statement. Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). Therefore, the Court will review the Record to determine whether there exist any facts outside Transportation and Webster's Rule 56.1 Statements that would raise genuine issues of fact and preclude summary judgment in their favor. See Cont'l Assurance Co. v. Sanasee, 04 CV 412 (ILG), 2006 U.S. Dist. LEXIS 5358, at *4 n.1 (E.D.N.Y. Feb. 13, 2006) (Glasser, J.) (admitting facts not properly controverted, but "[nonetheless, the Court . . . reviewed the record in its entirety to determine whether disputed facts remain[ed] that should [have] prevent[ed] the granting of summary judgment.").

Certification of William C. Kelly ("Kelly Cert."), dated July 19, 2007, Ex. E. at 24:20-25. Its duties with regards to the subcontractors are described in its contract with Dollar, which provides:

> The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract . . . [and] [t]he Contractor shall be responsible to [Dollar] for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons performing portions of the Work under a contract with the Contractor.

Id., Ex. D ¶¶ 3.3.1-3.2. AARK's subcontractors completed the garage by February, 2001. See Affidavit of Eduardo Dutra ("Dutra Aff."), dated August 21, 2007, ¶10.

AARK, through its insurance broker Webster, procured a commercial general liability ("CGL") insurance policy from Transportation for the construction project, and such policy included products-completed operations hazard ("PCOH") coverage. Webster 56.1 ¶ 10; Affidavit of Trevor Claybaugh ("Claybaugh Aff."), dated January 12, 2007, Ex. A at Transp 058. The policy required that AARK notify Transportation of any "occurrence" of property damage "as soon as practicable." Claybaugh Aff., Ex. A at Transp 068.

On June 30, 2001, a truck delivering fuel to the completed garage fell through the first floor to the basement. See Transportation Rule 56.1 Statement of Undisputed Facts ("Transportation 56.1"), dated January 12, 2007, ¶ 4. The collapse caused substantial damage to the garage. Id. ¶ 5. AARK learned of the collapse that same day, and its Chief Executive Officer, Ray Carlisle, inspected the garage immediately after the incident. Id. ¶¶ 6-7. AARK's President, Eduardo Dutra, who was out of the country at the time,

3

visited the site a few weeks later.  See Kelly Cert., Ex. E at 30:12-22, 32:13-21.  AARK was also hired to repair the damage.

On July 5, 2001, just five days after the accident, AARK wrote a letter to the subcontractor that had designed and manufactured the pre-cast concrete system for the garage floors, New Stress International, Inc. ("New Stress").  See Affirmation of Erik W. Drewniak ("Drewniak Aff."), Ex. G.  The letter alerted New Stress of the incident and informed it that the accident "involved the structural failure of the precast system," and further advised New Stress to "notify all appropriate parties."  Id.

On May 6, 2003, nearly two years after the accident, AARK received a letter from Dollar's property insurer, Northland Insurance Company ("Northland"), notifying AARK that it was liable to Northland for the damage and repair of the garage, totaling $1.4 million, due to the negligence of AARK, its agents, servants and/or its employees in failing to properly oversee and supervise the construction of the garage.  Id., Ex. F.  On May 20, 2003, Webster received from AARK a copy of the May 6, 2003 letter, as well as an accord general liability notice of occurrence/ claim form regarding the June 30, 2001 accident.  Id., Ex. H.  Webster faxed the notice to Transportation.  Webster 56.1 ¶ 12.

Transportation, in response, began an investigation into the claims and retained counsel to defend AARK.  Transportation 56.1 ¶ 29.  It also sent a letter to AARK on June 24, 2003, stating that it would defend and indemnify AARK with respect to the claims asserted against it by Dollar's property insurer, but that it reserved its rights to deny coverage at any point that it discovered that the claims involved in the lawsuit were not covered pursuant to the policy and that it would be entitled to have a court decide whether it was required to defend and indemnify AARK.  See Affidavit of Anthony M.

4

Napoli ("Napoli Aff."), dated August 22, 2007, Ex. E. The letter also explained the policy's exclusions with regards to property damage coverage. See id.

On June 16, 2004, Northfield, a sister company of Northland, and subrogee of Dollar, commenced suit against AARK, New Stress, and several other parties for, *inter alia*, failure to supervise, failure to comply with New York City building codes, and failure to properly construct a structure that would adequately support vehicles entering the garage (the "Northfield action"). See Drewniak Aff., Ex. I. On January 12, 2007, Transportation commenced this action seeking a declaration that it need not defend or indemnify AARK in the Northfield action because the accident at issue did not constitute an "occurrence" under the insurance policy, that if it did, the property damage at issue was exempt from the policy, and even if it was not, AARK's late notice of the occurrence defeated a condition precedent to coverage. See id., Ex. A. AARK responded by filing a third-party complaint against Webster for false representation as to the insurance policy that it procured on AARK's behalf. See id., Ex. A. On July 19, 2007, Webster moved for summary judgment, seeking a declaration that it is not responsible for any losses AARK might incur in the Northfield action pursuant to its relationship to AARK as its insurance broker.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when there are "no genuine issues as to any material fact[s] and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56 (c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986). A genuine issue exists if a reasonable jury could find in favor of

the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party has the burden to demonstrate that no genuine issue of material fact exists, and the Court must draw all reasonable inferences in favor of the non-moving party.  Id. at 255.  The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998); see Ostensen v. Suffolk County, 05 CV 4456, 2007 U.S. App. LEXIS 12183, at *2 (2d Cir. May 23, 2007) ("[I]n opposing a motion for summary judgment, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation.").

The Court's role in a motion for summary judgment is one of "issue-finding," not "issue-resolution."  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  Therefore, the Court's charge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Where, as here, the "sole question presented to the Court is the interpretation of a clear and unambiguous written agreement, the issue is one of law and may properly be decided by the Court upon a motion for summary judgment."  Amin Realty, L.L.C. v. Travelers Prop. Cas. Co., 05 CV 195 (RLM), 2006 U.S. Dist. LEXIS 40867, at *8 (E.D.N.Y. June 20, 2006).

### B.    The Policy

Under New York law, an insurer's duty to indemnify arises under the insurance contract.  Jakobson Shipyard, Inc. v. Aetna Cas. & Sur. Co., 961 F.2d 387, 389 (2d Cir. 1992).  The insurer bears the burden of showing that the loss claimed by the insured is excluded from coverage.  Id.  Where an exclusion allows for an exception, the insurer

6

bears the burden of showing that the exception to the exclusion does not apply. Blank, 27 F.3d at 789. "Exclusions in policies of insurance must be read *seriatim*, not cumulatively, and if any one exclusion applies there can be no coverage since no one exclusion can be regarded as inconsistent with another." Ruge v. Utica First Ins. Co., 32 A.D.3d 424, 426 (2d Dep't 2006) (quoting Zandri Constr. Co. v. Firemen's Ins. Co. of Newark, 81 A.D.2d 106, 109 (3d Dep't 1981)).

The policy here covered liability arising from bodily injury and property damage for which AARK would be liable to third parties. The policy stated: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) the 'bodily injury' or 'property damage' is caused by an occurrence . . . ." Claybaugh Aff., Ex. A at Transp 061. "Property damage" is defined in the policy as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id. at 072. Here, there was clearly physical injury to the garage that resulted in the loss of use of the garage for a period of time while the floor was being repaired, bringing the damage within the first definition above. The policy further requires, however, that the property damage be caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 071. Therefore, the threshold issue the Court must determine is whether the property damage to AARK's completed work product, the garage, was an

7

"occurrence" within the meaning of the policy.[2]

An insurer of a CGL policy is not a surety for a construction contractor's defective work. Bonded Concrete, Inc. v. Transcon. Ins. Co., 12 A.D.3d 761, 762 (3d Dep't 2004). It has been well-settled by the New York courts that a CGL policy

> does not insure against faulty workmanship in the work product itself but rather faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product. [Such policies are not] intended to provide contractual indemnification for economic loss to a contracting party because the work product contracted for is defectively produced.

George A. Fuller Co. v. United States Fid. & Guar. Co., 200 A.D.2d 255, 259 (1st Dep't 1994); see also J.Z.G. Res., Inc. v. King, 987 F.2d 98, 103 (2d Cir. 1993) ("The coverage [provided by a CGL policy] is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." (quotation omitted)). Thus, an "occurrence" of property damage under a CGL policy cannot exist where a general contractor's "negligent acts only affect[] [the property owner's] economic interest in the building." George A. Fuller Co., 200 A.D.2d at 259. Based on this rule, this Court finds that AARK's policy does not cover the costs of repair of the garage and loss of use of the building incident to the closure of the garage, because the alleged negligence only affected Dollar's economic interest in AARK's completed work product. To hold otherwise would convert Transportation into a surety for AARK's performance, which is

---

[2] The CGL policy also included a series of exclusions for which the policy would not cover liability arising from property damage. This Court need not discuss whether these exclusions would apply because, as explained below, accidents involving damage to a contractor's work product alone does not constitute an occurrence under a CGL policy.

8

a result that the parties to the contract never intended. Id. at 260.[3]

AARK argues that it specifically sought to obtain PCOH coverage so that it would be covered for any liability arising from its completed work product.[4] However, this Court's finding of no occurrence is not inconsistent with the general concept of PCOH coverage. As the Second Circuit wrote:

> The products hazard and completed operations provisions are not intended to cover damage to the insured's products or work project out of which an accident arises. The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or <u>damage to property other than to the product or completed work itself</u>, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. <u>The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.</u>

J.Z.G. Res., Inc., 987 F.2d at 102-03 (emphases added). The PCOH coverage provided

---

[3] Moreover, CGL policies do not provide coverage for complaints sounding in contract. Royal Ins. Co. of Am. v. Ru-Val Elec. Corp., 92 CV 4911, 1996 U.S. Dist. LEXIS, at *4 (E.D.N.Y. Mar. 8, 1996). To determine whether there is a duty to indemnify, "[t]he important distinction is not whether the complaint states a contract or tort theory, but whether the damage to be remedied is the faulty work or product itself[,] or injury to person or other property." Id. at *5. A "contract default under a construction contract is not transformed into an 'accident . . .' by the simple expedient of alleging negligent performance or negligent construction." George A. Fuller Co., 200 A.D.2d at 259-60. Despite the drafting of Northfield's complaint as an action sounding in negligence, the claims against AARK concern its failure to meet its contractual obligations. See Parkset Plumbing & Heating Corp. v. Reliance Ins. Co., 87 A.D.2d 646, 647 (2d Dep't 1982) ("The complaint . . . is clearly one sounding in contract and not in negligence and the mere use of the word 'negligent' alone cannot turn the complaint into a cause of action for negligence. It cannot be contended that the parties 'intended these liability policies to operate as performance bonds for the work performed by plaintiff or his subcontractor.'" (internal citations omitted)). Thus, although AARK operated under the false assumption that the policy would cover all acts of negligence, the acts alleged by the Northfield complaint are for breach of contract, and therefore not covered by the CGL policy.

[4] PCOH coverage under the policy extends to property damage "occurring away from [AARK's] premises and arising out of 'your product' or 'your work' so long as that work has been completed. . . . Work that 'may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.'" Id. at 071.

by the policy, therefore, only extends to damage to third parties from the use of the completed work product, and not damage to the product itself.

### C. <u>Duty to Report Occurrence As Soon As Practicable</u>

Even, assuming *arguendo*, that the CGL policy provisions applied to damage to a contractor's work product, AARK would still be without recourse because it did not comply with a condition precedent of the policy – that it inform Transportation of any occurrence under the policy "as soon as practicable." "Under New York law, compliance with a notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy." State of N.Y. v. Blank, 27 F.3d 783, 793 (2d Cir. 1994) (quotation omitted). Late notice is a complete defense to liability whether or not the insurance company was prejudiced by the delay. Amer. Home Assurance Co. v. Int'l Ins. Co., 90 N.Y.2d 433, 440 (1997). Notification provisions are important for several reasons:

> They enable insurers to make a timely investigation of relevant events and exercise early control over a claim. Early control may lead to a settlement before litigation and enable insurers to take steps to eliminate the risk of similar occurrences in the future. When insurers have timely notice of relevant occurrences, they can establish more accurate renewal premiums and maintain adequate reserves.

Blank, 27 F.3d at 794. Implementation of these policies requires that notice be given within a reasonable time under all the circumstances. See Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 441 (1972).

The obligation to provide notice is triggered when the "circumstances known to the insured at the time would have suggested to a reasonable person the possibility of a claim." Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc., 822 F.2d 267, 272

(2d Cir. 1987). Whether notice is given within a reasonable time may be determined as a matter of law when: "(1) the facts bearing on the delay in providing notice are not in dispute and (2) the insured has not offered a valid excuse for the delay." Blank, 27 F.3d at 795. An insured's good faith belief in its nonliability may excuse a failure to give timely notice if the belief is reasonable under all the circumstances. U.S. Underwriters Ins. Co. v. A & D Maja Constr., Inc., 160 F. Supp. 2d 565, 569 (S.D.N.Y. 2001).

AARK did not inform Transportation of the accident at the garage until nearly two years after the accident when it received the claim letter from Northfield. Absent a valid excuse, failure to satisfy the notice requirement vitiates the insurance policy. Blank, 27 F.3d at 793-94. AARK maintains that its delay should be excused by its good faith belief in its nonliability. AARK contends that its President, who is also an engineer, visited the site and concluded that the accident had been caused by the unauthorized entry of a fuel truck that should not have been allowed in the garage, and not by any faulty construction. However, the merit of this excuse is belied by AARK's letter to New Stress only five days after the accident, in which AARK notified New Stress of the possibility that the collapse may have been caused by the concrete system it installed. Further, pursuant to AARK's contract with Dollar, it was responsible for supervising its subcontractors and for the quality of the work provided. Thus, after the collapse, any question regarding the integrity of the work completed at the garage should have triggered a response from AARK to contact its insurer. The delay of nearly two years cannot be excused by AARK's unreasonable belief in its nonliability. Therefore, this Court finds as a matter of law that, in failing to timely file a notice of occurrence, AARK failed to fulfill a condition precedent to the CGL policy, and

Transportation is accordingly not required to indemnify or defend AARK in the Northfield action.

### D. Duty to Provide a Defense

AARK also contends that, even if Transportation is not required to indemnify it for any liability it may incur as a result of the Northfield action, it must continue to defend AARK in the suit. See Gen. Motors Acceptance Corp. v. Nationwide Ins. Co., 4 N.Y.3d 451, 456 (2005) (an insurance company's duty to defend is broader than its duty to indemnify). Once an insurer undertakes the defense of an insured, equitable estoppel precludes the insurer from denying coverage if: "(1) the period of time taken by the insurer to determine compliance is unreasonable under the circumstances, and (2) the defense offered by the insurer during that period prejudices the insured." Commercial Union Ins. Co., 822 F.2d at 274. AARK only takes issue with the second prong of the above estoppel test, that it will be prejudiced if Transportation discontinues its defense of AARK in the Northfield action.

Although Transportation initially provided a defense to AARK in the Northfield action, it did so under a reservation of rights to disclaim coverage at any point. See Smith Jean, Inc. v. Royal Globe Ins. Cos., 139 A.D.2d 503, 504-05 (2d Dep't 1988) (finding that where an insurer undertakes defense of action under a reservation of rights, it is not precluded from later denying coverage so long as the insured would not suffer any prejudice). AARK maintains that it will be prejudiced because "it has not been in complete control of the defense . . . including the possibility of encouraging settlement negotiations." Dutra Aff. ¶ 17. However, AARK has offered the Court no further proof that it will be prejudiced other than this conclusory statement, and thus,

12

this Court finds that Transportation is not estopped from discontinuing its defense of AARK.

### E. Duty to Obtain Coverage

AARK has also filed a third-party complaint against Webster, alleging that it misrepresented the kind of insurance that was ultimately provided to AARK. AARK alleges that Weber orally stated that the policy would be "fully covered" for all property damage and/or negligence of AARK in its construction business, and that AARK relied on these representations. See Drewniak Aff., Ex. B at 8. Thus, AARK asks this Court to hold Weber liable for any losses it may incur in the Northfield action.

"Insurance agents or brokers are not personal financial counselors and risk managers, approaching guarantor status." Murphy v. Kuhn, 90 N.Y.2d 266, 273 (1997). The insurance broker-insured relationship is not a professional one which would normally give rise to a continuing duty to provide ongoing guidance because an insured is in a better position to understand its needs than are insurers. Id. at 273. Thus, a broker's duty is defined by the nature of the customer's request for coverage. Madhvani v. Sheehan, 234 A.D.2d 652, 654 (3rd Dep't 1996). "[I]nsurance agents have a common-law duty to obtain *requested* coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage." Murphy, 90 N.Y.2d at 270 (emphasis added).

Mr. Dutra, AARK's president, testified at his deposition that he met with representatives from Webster and explained the nature of the construction project involved, and the complaint alleges that AARK was informed by Webster that it would

13

be "fully covered" by the policy. See Napoli Aff., Ex. A at 97:5-23. It is not clear from Mr. Dutra's deposition testimony, however, that he in fact specifically requested that AARK be covered for damage to AARK's completed work product. Nancy Pandolfi, an account manager at Webster, testified that Mr. Dutra met with Webster's producers, agents responsible for meeting with potential clients and placing insurance orders, and that these persons would have been the only ones privy to Mr. Dutra's exact request. See Webster Reply Br., dated September 13, 2007, Ex. A at 13:12-23, 68:21-70:16. Because AARK never deposed these witnesses, it would be impossible to ascertain with certainty the information given to Webster, and whether Webster made any specific promises with regards to events that the CGL policy would or would not cover. Even if Mr. Dutra had expressed a desire to be "fully covered," New York courts have ruled that such general requests do not trigger a duty to advise or guide. See L.C.E.L. Collectibles, Inc. v. Amer. Ins. Co., 228 A.D.2d 196, 197 (1st Dept. 1996) (request for the "best and most comprehensive coverage" is not considered a specific request and therefore does not trigger a duty to advise); Chaim v. Benedict, 216 A.D.2d 347, 357 (2d Dep't 1995) (request for a "top of the line" policy that would cover plaintiffs "fully" did not constitute a specific request for underinsurance coverage, and thus, defendants had no duty to recommend different coverage even though defendants were made aware by the insured that the motorist would be driving out of state and needed "good coverage").[5]

      Mr. Dutra also testified that he received a copy 0f the policy, reviewed it, and kept

---

[5] The Court of Appeals explained in Murphy that other jurisdictions do recognize a special relationship triggering additional duties on the part of the broker in instances where there is some interaction regarding a question of coverage and the insured relies on the expertise of the agent. However, in those instances, the insured bears the burden of proving the extent of the interaction. AARK has not provided this Court with this information, and therefore, has not met its burden in this case.

it on file in his office.  See Kelly Cert., Ex. E at 98:7-22.  Therefore, regardless of whether a specific request was ever made by Mr. Dutra, the fact that he received a copy of the policy and reviewed it relieves Webster of any continuing duty.  The receipt of a declaration page and insurance policy constitutes "conclusive presumptive knowledge" of the terms and limitations of that policy.  Madhvani, 234 A.D.2d at 654-55.  Mr. Dutra was afforded the opportunity to review any limitations in the policy coverage and request additional coverage.  If AARK was displeased with the amount of coverage it received, it should have requested additional coverage at the time, and not when hindsight became 20/20.

## **CONCLUSION**

For the foregoing reasons, Transportation and Webster's motions for summary judgment are GRANTED.  The Clerk of Court is hereby directed to enter judgment in their favor.

SO ORDERED.

Dated:	Brooklyn, New York
	December 7, 2007

_____/s/_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

<u>Counsel for the Plaintiff</u>

Michael Patrick Murphy, Esq.
Erik W. Drewniak, Esq.

Nixon Peabody
437 Madison Avenue
New York, NY 10017

Counsel for the Defendant

Anthony M. Napoli, Esq.
Thomas M. Bona, Esq.
123 Main Street
White Plains, NY 10601

Arnold E. Reiter, Esq.
Reiter & Zipern
75 Montebello Road
Suffern, NY 10901

Counsel for Third-Party Defendant Webster Insurance

William C. Kelly, Esq.
Lustig & Brown, LLP
28 W. 44th Street, 20th Floor
New York, NY 10036

Counsel for Third-Party Defendant Fall Creek Contractors, Inc.

Richard Wayne Dawson, Esq.
Conway Farrell Curtin & Kelly P.C.
48 Wall Street
New York, NY 10005

Counsel for Third-Party Defendant MAV Construction Corp.

Suzanne M. Halbardier, Esq.
Barry McTiernan & Moore
2 Rector Street, 14th Floor
New York, NY 10006

Counsel for Third-Party Defendant Select Environmental Systems, Inc., t/a Select Maintenance Service, Inc., t/a Dale Sheet Street

Robert Joseph Pfuhler, Esq.
Connors & Connors P.C.
766 Castleton Ave.
Staten Island, NY 10314

Counsel for Third-Party Defendant S&S Roofing Inc.

Christopher Andrew South, Esq.
Law Offices of Charles J. Siegel
40 Wall Street
New York, NY 10005